**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| **NABIL AL-KHAROUF, *et al.*,** |
| Plaintiffs, |
| v. |
| **DISTRICT OF COLUMBIA**, |
| Defendant. |

Case No. 1:18-cv-00459 (TNM)

**MEMORANDUM AND ORDER**

The District of Columbia government, like other large organizations, often relies on outside contractors to execute its operations. In doing so, however, it must walk a fine line. The District must supervise the contractors to some extent to ensure they perform properly. But if the District exerts too much control over them, it subjects itself to employment laws as their employer. Whether the District has sufficiently walked that line is the issue here.

Plaintiffs—former contractors hired by a District agency—sue it for employment discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981. The District now moves for summary judgment. It argues that Title VII does not apply because Plaintiffs are its independent contractors, not employees. The Court cannot agree. There are genuine disputes of fact about how much control the District exercised over Plaintiffs, which is critical to determining whether an employer-employee relationship exists.

But summary judgment is warranted on the Section 1981 claim. Plaintiffs identify no policy or custom behind the alleged discrimination committed by their supervisor. For these reasons, the District's motion will be granted in part and denied in part.

**I.**

Both federal and local governments can only do so much on their own.  From time to time, they engage outside services to assist them.  The District is no different.  Its agencies use contractors "to perform services that are not part of a particular agency's regular business activities."  Def.'s Statement of Undisputed Material Facts ("Def.'s Statement") ¶ 1, ECF No. 29.

In 2008, the District's Department of Employment Services ("DOES") retained a private firm, Optimal Solutions & Technologies, Inc. ("OST"), to help "modernize its information technology unemployment insurance system and tax oversight program."  *Id.* ¶¶ 2, 6.  As the primary contractor, OST hired subcontracting vendors that offered candidates (or "resources") to assist with the DOES project.  *See* Def.'s Resp. to Pls.' Statement of Disputed Material Facts ("Def.'s Resp.") ¶ 5, ECF No. 31.  Plaintiffs Nabil Al-Kharouf, Kadih Nahed, Derek Price, and Alena Svozil (collectively "Plaintiffs") all worked as resources on the DOES project.  *Id.* ¶¶ 6–7, 9–10.

Plaintiffs claim that while on the DOES project, they experienced discrimination from Tharmalingam Annamalai—the Associate Director of the Office of Information Technology at DOES.  *See* Pls.' Opp'n to Def.'s Mot. for Summ. J. ("Pls.' Opp'n") Ex. 9 ¶ 2, ECF No. 30-1.  According to Plaintiffs, Annamalai gave preferential treatment to and only hired contractors of South Asian or Tamil-Indian origin, and he removed contractors who were from elsewhere.  *See* Second Am. Compl. ("Am. Compl.") ¶¶ 21, 25, ECF No. 26.  Plaintiffs are not South Asian or Tamil-Indian, and they were all removed from the DOES project.  *See* Pls.' Statement of Facts ¶¶ 39–40, 44–47, 50–52, 54–56, ECF No. 30.

They sue the District for employment discrimination under Title VII (Count I) and 42 U.S.C. § 1981 (Count II).[1]  *See* Am. Compl. ¶¶ 86–94.  The District now moves for summary judgment.  *See* Def.'s Renewed Mot. for Summ. J. ("Def.'s Mot."), ECF No. 29.

## II.

A court will award summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  And a fact is "material" if it "might affect the outcome of the suit under the governing law."  *Id.*

On summary judgment, courts draw all "justifiable inferences" in the non-moving party's favor and accept as true the non-moving party's evidence.  *Id.* at 255.  But more than a "scintilla of evidence" is required.  *Id.* at 252.  If a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," summary judgment is warranted.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## III.

### A.

The District seeks summary judgment on the Title VII claim for one reason:  It was not Plaintiffs' "employer" under the statute.  Def.'s Mot. at 23–30.[2]  Plaintiffs disagree.  They argue

---

[1]  The Court has subject matter jurisdiction under Title VII's jurisdictional provision, 42 U.S.C. § 2000e–5(f)(3), and the federal question statute, 28 U.S.C. § 1331.

[2]  All page citations refer to the page numbers that the CM/ECF system generates.

that the District and OST were their joint employers for the DOES project.  *See* Am. Compl.
¶¶ 15, 81.

Under the joint employer doctrine, "[t]wo separate entities may be joint employers of a
single same workforce if they share or co-determine those matters governing essential terms and
conditions of employment."  *Dunkin' Donuts Mid-Atl. Distrib. Ctr., Inc. v. NLRB*, 363 F.3d 437,
440 (D.C. Cir. 2004) (cleaned up).  Whether a joint-employer relationship exists is "essentially a
factual issue."  *Id.* (cleaned up).

The D.C. Circuit has "recognized two largely overlapping articulations of the test for
identifying joint-employer status."  *Al-Saffy v. Vilsack*, 827 F.3d 85, 96 (D.C. Cir. 2016).  The
"*Spirides* test"—based on *Spirides v. Reinhardt*, 613 F.2d 826 (D.C. Cir. 1979)—considers the
"economic realities of the work relationship" and "calls for application of general principles of
the law of agency to undisputed or established facts."  *Id.* at 831 (cleaned up).  If there is the
"right to control and direct the work of an individual, not only as to the result to be achieved, but
also as to the details by which that result is achieved, an employer/employee relationship is likely
to exist."  *Id.* at 831–32.

The other test arises from *NLRB v. Browning-Ferris Industries of Pennsylvania, Inc.*, 691
F.2d 1117 (3d Cir. 1982).  As with the *Spirides* test, this "*Browning-Ferris* test" considers
whether the employer, "while contracting in good faith with an otherwise independent company,
has retained for itself sufficient control of the terms and conditions of employment of the
employees who are employed by the other employer."  *Id.* at 1123.

For both tests, "the touchstone is control." *Al-Saffy*, 827 F.3d at 97. The *Spirides* test establishes various factors for courts to consider,[3] but the "extent of the employer's right to control the means and manner of the worker's performance is the most important factor to review." 613 F.2d at 831 (cleaned up).

In *Al-Saffy*, a Department of Agriculture employee based at the U.S. Embassy in Yemen sued the Departments of Agriculture and State for employment discrimination under Title VII. 827 F.3d at 89–91. The district court granted summary judgment for the State Department, finding it was not an employer under the statute. *Id.* at 91–92. The D.C. Circuit reversed. It held that the plaintiff "came forward with evidence creating a genuine dispute concerning the State Department's control over his work and employment." *Id.* at 97. The court noted that the plaintiff reported directly to State Department employees and the federal chief of missions statute "grants the United States ambassador in a foreign country plenary authority over other executive branch employees in that country." *Id.* Thus, the court found there were "genuine questions of material fact about whether the State Department exercised sufficient control over [the plaintiff's] employment in Yemen to be his joint employer" for Title VII. *Id.* at 98.

The Court need not decide whether to apply the *Spirides* or *Browning-Ferris* test here. Under either, the record reveals a genuine dispute of fact about the District's control over Plaintiffs for the DOES project. As in *Al-Saffy*, this dispute precludes summary judgment for the District on Plaintiffs' Title VII claim. *See id*. at 97–98.

---

[3] These factors are: (1) the occupation; (2) the skill required; (3) who furnishes the equipment and workplace; (4) the length of time worked; (5) the method of payment; (6) how the work relationship is terminated; (7) whether annual leave is afforded; (8) whether the work is integral to the business; (9) whether the worker accumulates retirement benefits; (10) whether the "employer" pays social security taxes; and (11) the parties' intentions. *Spirides*, 613 F.2d at 832.

The District contends that OST, not the District, had "primary control over the means and methods" of completing the DOES project.  Def.'s Mot. at 29–30.  It is not so clear-cut.

The Court agrees that OST was key to the DOES project.  It maintained the methodology for screening potential candidates to work on the project.  *See id*. Ex. 1 at 5.  It created a plan for the "tasks, work breakdown structure, completion dates, milestones, resource staffing, resource allocation, [and] estimated hours" for the DOES project.  *Id.* at 6.  And it created a "policy and procedures manual to manage the relationship" with subcontracting vendors and "Program Managers" (District employees).  *Id.*

But that is not the whole picture.  A District employee requested, reviewed, and selected the candidates who worked on the DOES project.  *See* Def.'s Statement ¶ 16; Def.'s Mot. Ex. 1 at 3.  Once hired, Plaintiffs received a chapter of the District's personnel manual.  Def.'s Resp. ¶ 15.  They also received access to DOES computers, databases, and badges to work on-site, which they usually did.  *See id.* ¶ 20; Pls.' Opp'n Ex. 7 ¶ 18; *id.* Ex. 8 ¶ 11.

More, the record reveals a factual dispute over the District's involvement in Plaintiffs' day-to-day work on the DOES project.  The District states that "DOES did not maintain personnel files, conduct performance reviews, or provide reprimands."  Pls.' Opp'n Ex. 6 at 41.  But DOES employees, including Annamalai, supervised Plaintiffs.  *See id*. Ex. 3 at 26; *id.* Ex. 4 at 31; *id.* Ex. 5 at 35–36; *id.* Ex. 6 at 40–41.  A DOES employee served as Plaintiffs' "first-line supervisor," and he "regularly met and communicated with the Plaintiffs about their work and status of tasks within projects" and handled intraoffice personnel issues that would arise.  *Id.* Ex. 7 ¶¶ 15–17.  And another DOES employee also "supervised the Plaintiffs and met with them to discuss their work, status of assignments, and any issues or other work-related matters."  *Id.* Ex.

8 ¶ 5.  This evidence is relevant to determining whether an employer-employee relationship

exists.  *See Al-Saffy*, 827 F.3d at 97.

It also remains disputed whether DOES could terminate Plaintiffs and the other

contractors.  The District admits that Annamalai did not want Plaintiffs to keep working on the

DOES project.  Def.'s Resp. ¶ 24.  But it argues the Program Managers could not terminate the

contract between OST and a subcontractor.  *Id.*  They could only discontinue the subcontractor's

work on the DOES project.  *Id.*

The Court need not unravel whether removing a contractor from a project is truly distinct

from terminating the contract that enables the contractor to work on the project in the first place.

Even assuming a relevant distinction, Plaintiffs submit evidence that DOES *could* terminate

them.  Annamalai "took appropriate disciplinary action to address staff deficiencies," which

included "the reassignment or *termination* of contractors and employees."  Pls.' Opp'n Ex. 9 ¶ 4

(emphasis added).[4]  Plaintiffs' DOES supervisor also "had the authority to terminate a contract

because the contractors were essentially at-will employees."  *Id.* Ex. 7 ¶ 14.  And he did

terminate contractors while employed at DOES.  *Id.* ¶ 11.  This competing evidence cannot be

reconciled at the summary judgment stage.

The District argues that it never intended to have an employer-employee relationship with

Plaintiffs.  *See* Def.'s Mot. at 25–26.  True, the District designated OST as the "Prime

Contractor" and those hired as "subcontracting vendors" and "resources," not employees.  *Id.* Ex.

1.  The contract between OST and the subcontracting vendors also states that the "relationship of

---

[4]  Indeed, Annamalai may have prepared a "[d]etailed explanation for the termination" of
Plaintiffs "based on personal investigation and observation."  Pls.' Opp'n Ex. 9 ¶ 5.  This
document, however, is not part of the record on summary judgment.

Subcontractor and [OST] is independent, and no employee-employer relationship exists between the parties." *Id.* Ex. 2 at 9. But labels are not everything.

Consider *Harris v. Attorney General*, 657 F. Supp. 2d 1 (D.D.C. 2009). There, the court addressed whether the Department of Justice was a joint employer of a contractor under Title VII. *Id.* at 9–12. The court acknowledged that the contractor's contract with Justice made clear "that there was no employer-employee relationship." *Id.* at 12. But it still denied the Department's summary judgment motion because the evidence showed that it "had the right to control the means and manner of the worker's performance." *Id.* at 11 (cleaned up).

Here, the District's evidence is even weaker. Neither the District nor Plaintiffs were party to the contract between OST and its subcontracting vendors. So the Court cannot rely on this language as evidence that the District intended to disestablish any employment relationship with Plaintiffs. And as *Harris* makes clear, contract language "is not necessarily controlling." *Spirides*, 613 F.2d at 832. Plaintiffs have submitted evidence raising a genuine dispute of fact about whether the District's control over Plaintiffs created an employer-employee relationship, despite this contract language.

To be sure, some undisputed facts weigh against finding that the District was Plaintiffs' joint employer. Plaintiffs admit that the District did not manage their payroll, insurance, or taxes while they worked on the DOES project. *See* Pls.' Opp'n at 14. They were paid an hourly rate based on the contract between OST and the subcontractors. Def.'s Mot. Ex. 2 at 10. And they worked on one-year contracts that could be renewed only four times. *Id.*

But it is not the Court's role at summary judgment to determine how much weight to afford this evidence. Or to decide whether this evidence is enough to overcome the genuine

dispute about the District's control over Plaintiffs during the DOES project—the "most important factor" to consider in deciding whether an employer-employee relationship exists.

The District's motion for summary judgment on Plaintiffs' Title VII claim will be denied.

**B.**

The District seeks summary judgment on Count II of the Amended Complaint for two reasons. First, it argues that Section 1981 does not provide a private right of action. Def.'s Mot. at 31–32 (citing *Brown v. Sessoms*, 774 F.3d 1016, 1021–22 (D.C. Cir. 2014)). And second, Plaintiffs identify no District custom or policy linked to Annamalai's alleged discrimination. *Id.* at 32–33. The Court agrees with the District on the second ground.

The District's first argument rests on the premise that Plaintiffs fail to invoke 42 U.S.C. § 1983 in their Amended Complaint. Section 1983 is the "exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor." *Jett v. Dall. Indep. Sch. Dist.*, 491 U.S. 701, 735 (1989).[5] So the District argues that without Section 1983 Plaintiffs cannot sustain a claim under Section 1981. True. But the District's premise is wrong.

Admittedly, the Amended Complaint could be clearer. Pleading rules, however, "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (per curiam). And there is "no heightened pleading rule [that] requires plaintiffs seeking damages for violations of constitutional rights to invoke § 1983 expressly in order to state a claim." *Id.* The defendant need only have "notice of the claims against it." *Brown*, 774 F.3d at 1022 (cleaned up).

---

[5] In *Brown*, the D.C. Circuit joined other circuits in finding that the amendments to Section 1981 did not nullify *Jett*. *See* 774 F.3d at 1021.

Plaintiffs state under Count II in the Amended Complaint that they "bring this count pursuant to 42 U.S.C. Section 1983." Am. Compl. ¶ 94. And they cite the full language of Section 1983. *Id.* This is enough. The District was on notice that Plaintiffs seek relief under Section 1983 for an alleged violation of Section 1981.

But the road ends there for Plaintiffs. They argue that the Amended Complaint contains "factual events that support a claim for discrimination in contracts under § 1981 and § 1983." Pls.' Opp'n at 15. Not so.

To recover under Section 1983, Plaintiffs "must show that the violation of [their] right to make contracts protected by § 1981 was caused by a custom or policy."[6] *Jett*, 491 U.S. at 735–36 (cleaned up). The policy or custom must be an "affirmative link" that served as the "moving force" behind the violation. *Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003) (cleaned up). Actions of an individual employee, on their own, are insufficient. *See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 691 (1978) ("[W]e conclude that a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." (emphasis in original)).

The D.C. Circuit has set out several ways in which a policy can establish municipal liability:

> [1] the explicit setting of a policy by the government that violates the Constitution; [2] the action of a policy maker within the government; [3] the adoption through a knowing failure to act by a policy maker of actions that are so consistent that they have become custom; [4] the failure of the government to respond to a need (for example, training of employees) in such a manner as to show deliberate indifference to the risk that not addressing the need will result in constitutional violations.

---

[6] Plaintiffs' Title VII claim cannot serve as a basis to recover under Section 1983. *See Hamilton v. District of Columbia*, 720 F. Supp. 2d 102, 110–11 (D.D.C. 2010) ("[I]ndividuals cannot bring suit under § 1983 to redress violations of rights conferred by Title VII because a right created by Title VII must be asserted directly under Title VII.").

*Baker*, 326 F.3d at 1306 (cleaned up).  None of these circumstances exists here.

Instead, Plaintiffs submit bare and conclusory statements that the District "has engaged in a pattern and practice of discriminating against individuals who are not of South Asian race and/or Tamil-Indian ethnicity."  Am. Compl. ¶ 91; *see id.* ¶¶ 11, 22, 27–28.  These allegations fail to identify "the contours of any type of municipal policy."  *Blue v. District of Columbia*, 811 F.3d 14, 20 (D.C. Cir. 2015).  So they are insufficient.

Plaintiffs also assert that the District was "an active participant and fully aware of the targeting actions of Mr. Annamalai."  Am. Compl. ¶¶ 29, 36.  But they provide no more details or evidence to support this claim.  Indeed, by Plaintiffs' own admission, the District reprimanded Annamalai for "staff abuses."  *Id.* ¶ 30.  So there is no basis to find that the District knowingly failed to respond to Annamalai's alleged discrimination or was deliberately indifferent to it.

It is true that Annamalai is the Associate Director of the Office of Information Technology for DOES.  Pl.'s Opp'n Ex. 9 ¶ 2.  But Plaintiffs do not allege, let alone prove, that this position is "one with authority to establish governmental policy."  *Singletary v. District of Columbia*, 766 F.3d 66, 73 (D.C. Cir. 2014) (cleaned up).  At most, the evidence shows that Annamalai evaluated projects, employees, and contractors, and "took appropriate disciplinary action to address staff deficiencies" at the direction of the head of DOES.  Pls.' Opp'n Ex. 9 ¶ 3. This fails to establish a policy-making role that could trigger municipal liability.

Consider *Olatunji v. District of Columbia*, in which the plaintiff also brought a Title VII and Section 1981 action against the District for employment discrimination.  958 F. Supp. 2d 27 (D.D.C. 2013).  The plaintiff claimed that his supervisor, a male of Iranian descent, "treated him differently than a similarly-situated colleague, an Iranian female."  *Id.* at 29.  In rejecting the Section 1981 claim, the court found that the plaintiff "has failed to include any allegations

whatsoever demonstrating how the individual actions cited in his Complaint constitute the official policy of the District." *Id.* at 35 (cleaned up).  The court thus granted the defendant's summary judgment.  *Id.* at 35–36.

So too here.  Plaintiffs' case is based on the "alleged misbehavior of only one municipal employee," Annamalai.  *Blue*, 811 F.3d at 19.  Plaintiffs allege that Annamalai "target[ed] individuals and corporations that belonged to other classes outside of his race and national origin for termination and replacement," including them.  Am. Compl. ¶¶ 17–21.  He only hired contractors of the same race and national origin and treated them more favorably, while he verbally abused and mistreated those that were not.  *See id.* ¶¶ 25–26, 40, 45, 50, 57–58, 69, 78.  But without a policy or custom as the "affirmative link," these actions—even if true—cannot support damages under Section 1983.  *See Monell*, 436 U.S. at 691.

Since there is no identifiable custom or policy behind Annamalai's alleged discrimination, Plaintiffs have failed "to make a showing sufficient to establish the existence of an element essential" to their claim.  *See Celotex Corp.*, 477 U.S. at 322.  So the Court will grant summary judgment for the District on Count II.

## IV.

For these reasons, it is hereby **ORDERED** that Defendant's motion for summary judgment is GRANTED in part and DENIED in part.  The Court hereby GRANTS Defendant's summary judgment motion as to Count II of the Amended Complaint and DENIES the motion as to Count I of the Amended Complaint.

**SO ORDERED.**

Dated: October 30, 2020                                TREVOR N. McFADDEN, U.S.D.J.